## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DON C. SCARBROUGH,

       Plaintiff,

vs.                                     No. CIV 98-0141 JC/RLP

FRED T. ALVAREZ, Individually,
and in his official capacity as
Eddy County Commissioner, and the
EDDY COUNTY COMMISSION,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendants' Motion to Strike Portions of Affidavit of Plaintiff *(Doc. 11)* and Defendants' Motion to Dismiss *(Doc. 6)*. The Court has reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities. On September 15, 1998, the Court held a hearing in Las Cruces, received the arguments of counsel and took the motions under advisement.

### Background

Plaintiff, Don C. Scarbrough, is the former Chief of the Riverside Volunteer Fire Department. On July 27, 1995, Plaintiff received a letter from Eddy County Manager, Steve Massey. The letter informed Scarbrough that the Eddy County Commission had requested an investigation by the Sheriff's Office into allegations of impropriety in the operation of the Fire Department and notified Scarbrough that he was relieved of his duties as Fire Chief during the investigation. A resulting criminal complaint was filed on August 8, 1995, charging Plaintiff with embezzlement.

Defendant Fred T. Alvarez, an Eddy County Commissioner, was questioned by a reporter from the ARTESIA DAILY PRESS about Plaintiff's arrest.   In the August 9, 1995 issue of the newspaper, Alvarez was quoted as stating, "There were just a few things that were illegal, and we decided to put a stop to it."   Plaintiff alleges that the commissioner's statements to the newspaper reporter were made maliciously and in retaliation for Plaintiff's vocal opposition to a fire excise tax. Three months later, the embezzlement charges were dismissed at a preliminary hearing for lack of probable cause.

Defendants seek dismissal of the complaint in its entirety.   According to Defendants, Plaintiff has set forth two separate claims:  (1) a § 1983 property due process claim, and (2) a state defamation claim for the remarks by Mr. Alvarez to the ARTESIA DAILY PRESS.   The parties have filed exhibits, including Plaintiff's Affidavit.   I will deny Defendants' motion to strike portions of that affidavit as I can ignore those paragraphs which are not based on personal knowledge.   The parties have agreed that the Court may more properly address the motion to dismiss as a motion for summary judgment. The defense of qualified immunity has been raised, and Plaintiff does not dispute that he agreed to a stay of discovery.   Further, Plaintiff has not filed a Rule 56(f) affidavit requesting the Court to delay ruling on the pending motions.

**Analysis**

## I.    Section 1983 Property Due Process Claim

In order to prevail on his § 1983 due process claim, Plaintiff must show that Defendants deprived him of a property interest secured by the Constitution or laws of the United States. See Lynch v. Household Finance Corp., 405 U.S. 538 (1972).  Plaintiff asserts a property interest in "continued employment" in his volunteer position as the Fire Chief.  Scarbrough's property interest

claim is properly analyzed in the context of "public employment" notwithstanding that his position was unpaid.   See Robinson v. Houston-Galveston Area Council, 566 F. Supp. 370, 376 (S.D. Tex. 1983) ("'property' interest turns upon the finding of a claim of statutory entitlement to a benefit, rather than on the economic value of the benefit itself").

The Supreme Court has defined a property interest in the employment context as a "legitimate expectation in continued employment." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). A protected property interest is "defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. Defendants contend that Scarbrough was an "at will" employee and possessed no constitutionally protected property interest in his position. Indeed, under New Mexico law, employment is presumed to be for an indefinite period and terminable at the will of either party unless a contract exists stating otherwise. See Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 732 (1996).

A protected property interest is defined by "substantive rather than procedural restrictions on an employer's discretion to terminate an employee." Russillo v. Scarborough, 935 F.2d 1167, 1170-71 (10th Cir. 1991). The Tenth Circuit explained that

> procedural protections do not support a "legitimate claim of entitlement" to future employment. At best, they merely support a claim of entitlement to the procedural protection themselves . . . . [s]uch a right attaches only when there are substantive restrictions on the employer's discretion. For example, if a statute, regulation, or policy specifies the grounds on which an employee may be discharged, or restricts the reasons for discharge to 'just cause shown,' then the employee has a right to continued employment until such grounds or causes are shown.

Asbill v. Housing Auth. of Choctaw Nation, 726 F.2d 1499, 1502 (10th Cir. 1984).  Thus, anticipated procedures for removal from the volunteer position cannot support a legitimate expectation to continued employment.[1]

Plaintiff fails to demonstrate any type of substantive restriction, such as discharge for "just cause," was imposed by either an express or implied contract of employment.  New Mexico law provides Eddy County with supervisory control of the county fire districts governed by appropriate resolutions of the Board of County Commissioners.  N.M. Stat. Ann. § 59A-53-5(1).  The undisputed evidence establishes that "Eddy County did not have policies, procedures, and employee handbook, personnel manuals or other rules which governed the discharge of County volunteers.  County volunteers were simply at will."  Aff. of Human Resources Assistant, Janet Cox, at ¶ 3.  Because Plaintiff fails to assert an established property interest in continued employment deserving of due process protection, no further qualified immunity analysis is required.  See Siegert v. Gilley, 500 U.S. 226, 233 (1991).

## II.    Defamation Claim

In 1975, the New Mexico Supreme Court abolished common law sovereign immunity for tort actions.  Hicks v. State, 88 N.M. 588 (1975).  In response, the legislature enacted the New Mexico Tort Claims Act ("NMTCA"), N.M. Stat. Ann. § 41-4-1 et seq., which reinstated governmental immunity and then waived it under specifically expressed circumstances.  N.M. Stat. Ann § 41-4-4 ("A governmental entity and any public employees while acting within the scope of duty are granted

---

[1]  Plaintiff postulates that Defendants could not remove him from his position because under his "recollection of the rules, regulations, and by-laws . . . the members of the Volunteer Department voted on who was and was not a member."  Plaintiff's Aff. at ¶ 7.  This argument ignores the Supreme Court's admonition that constitutionally-protected property "cannot be defined by the procedures for its deprivation . . . ."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).

immunity from liability for any tort except as waived . . . .").  The Act covers the activities of both defendants in this case, namely, Mr. Alvarez as a "public employee" and the Eddy County Commission as a "governmental entity."

Plaintiff asserts, however, that he has also stated a separate defamation claim against Defendant Alvarez which is not governed by the New Mexico Tort Claims Act.  Scarbrough contends that the alleged defamatory statements "were made with malice, illwill [sic], and hatred of and toward Plaintiff . . . . [and that] Defendant Alvarez acted in his individual and in his official capacity as Eddy County Commissioner."  Compl. at ¶ 8.  Relying on his assertion of "individual capacity," Scarbrough basically argues that Alvarez stepped outside of the scope of his public employment.  The Tort Claims Act defines "scope of duties" as "performing any duties which a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance."  N.M. Stat. Ann. § 41-4-3(F).  I find Plaintiff's allegations regarding the defamation claim insufficient to take him out the purview of the Tort Claims Act.

Except when immunity is specifically waived in the Act, the NMTCA shields both governmental entities and public employees from liability for torts.  If a public employee, while acting in the scope of duty, commits a tort falling within one of the waivers, the entity which employs him is liable.  N.M. Stat. Ann. § 41-4-4(A).  Yet, the only waiver in the NMTCA for a defamation claim applies to claims against a "law enforcement officer," which is clearly inapplicable here.  See N.M. Stat. Ann § 41-4-12.  Because none of the enumerated waivers is on point, Plaintiff fails to state a cause of action for defamation under the Tort Claims Act.

Additionally, Defendants are entitled to summary judgment on the defamation claim on two other grounds.  Although Plaintiff's defamation claim arose on  August 9, 1995 when the ARTESIA

DAILY PRESS article was published, this lawsuit was not filed until October 24, 1997.  Thus, the

NMTCA's two-year statute of limitations bars the tort claim.  N.M. Stat. Ann. § 41-4-15 ("Actions

against a governmental entity or a public employee for torts shall be forever barred, unless such action

is commenced within two years after the date of occurrence . . . .").  Similarly, the undisputed

evidence establishes that Plaintiff failed to comply with the NMTCA's notice requirement as set forth

in N.M. Stat. Ann. § 41-4-16.

## III.    Other Potential Theories for Relief

The Court has determined that the complaint fails to state viable claims on the only legal

theories identified by the parties.  However, "[a] complaint should not be dismissed under

Rule 12(b)(6) 'merely because plaintiff's allegations do not support the legal theory he intends to

proceed on,' and certainly not when other theories are apparent on the face of the complaint."

Barrett v. Tallon, 30 F.3d 1296, 1299 (10th Cir.1994) (quoting 5A CHARLES A. WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 at 336-37 (2d ed. 1995)).

Plaintiff has left it to the Court to sift through the factual allegations of the complaint to

ascertain whether he has sufficiently pled the material elements of any other viable causes of action.

Although the Court finds that the allegations implicate two further unidentified claims for relief, as

discussed below, neither state a claim upon which relief may be granted.

### A.  Section 1983 Claim for Violation of Plaintiff's First Amendment Rights

"[P]ublic officials may not deny or deprive a person of a governmental benefit or privilege on

a basis that infringes her or his freedom of speech."  Hyland v. Wonder, 972 F.2d 1129, 1134

(9th Cir. 1992), cert. denied, 508 U.S. 908 (1993).  Even where an employment position is terminable

at will and, therefore, not a "protected property interest" for due process purposes, a

First Amendment claim may yet arise.   See Anderson v. McCotter, 100 F.3d 723, 727 (10th Cir. 1996).

> The injury to position or privilege necessary to activate the First Amendment . . . need not rise to the level of lost employment.   Retaliatory actions with less momentous consequences, such as loss of a **volunteer** position, are equally egregious in the eyes of the Constitution because a person is being punished for engaging in protected speech.

Hyland v. Wonder, 972 F.2d at 1135 (emphasis added).   Indeed, the Tenth Circuit has expressly stated that "[t]he exercise of free speech rights is not dependent upon the receipt of a full-time salary."   Anderson, 100 F.3d at 727.   The Court will assume for purposes of this analysis that Scarbrough's vocal opposition to the fire tax would constitute protected speech under Pickering v. Board of Education, 391 U.S. 563 (1968).

Yet, Scarbrough has neither alleged nor come forward with any evidence that his termination from the volunteer fire chief position was in any related to his exercise of protected speech.   The only alleged retaliation for Plaintiff's protected speech is the statement made by Alvarez to the news media.   Under § 1983, absent retaliatory termination of a governmental benefit or privilege, defamation alone is simply insufficient to sustain a violation of Plaintiff's First Amendment rights. See Guy v. State of Illinois, 958 F. Supp. 1300, 1310 (N.D. Ill. 1997).

**B.  Section 1983 Claim for Violation of a Liberty Interest Without Due Process**

Although Plaintiff's counsel never identifies it as a theory for recovery, Plaintiff's factual allegations have been examined to see if he can state a § 1983 claim for violation of a "liberty interest" without due process of law under the Fourteen Amendment.   Scarborough claims that his reputation was directly damaged   from the dissemination of embezzlement charges in the

ARTESIA DAILY PRESS, and that the stigmatizing charges seriously impair his future employment opportunities.

"Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." Siegert v. Gilley, 500 U.S. 226, 233 (1991).  In what has become known as the "stigma plus" test of Paul v. Davis, 424 U.S. 693, 708-709 (1976), damage to reputation must be coupled with "something else" to rise to the level of violation of a protected liberty interest.  In an employment context, the Tenth Circuit has explained the standard for violation of a liberty interest in damage to one's reputation.

> When a public employer takes action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities, a claim for relief [under § 1983] is created.

Melton v. City of Oklahoma City, 928 F.2d 920, 927 (10th Cir. 1991).

The headline of the August 9, 1995 ARTESIA DAILY PRESS article states, "Former fire chief arrested on charge of embezzlement."  The report details the charges of illegal activity made against Scarbrough in the criminal complaint.  Some general information for the article relating to changes in the fire department was provided by the Eddy County Manager.  The only statements attributed to Defendant Alvarez are as follows:  "This has been going on for quite some time.  There were just a few things that were illegal, and we decided to put a stop to it."

Clearly, false allegations of embezzlement constitute charges of dishonesty or immorality that might seriously damage one's reputation and future employment prospects.  However, the article reported the "true fact" that Plaintiff had indeed been charged by the Sheriff's Office **in a criminal complaint** of embezzlement activities associated with the volunteer fire department property.

-8-

Although the criminal charge was later dismissed in court, the article accurately reflected the fact of the arrest which itself is the real stigmatization of which Plaintiff complains.

Finally, in order to be actionable, Plaintiff must "establish a sufficient nexus"--the stigmatizing statement must be the basis of adverse employment action.  Noland v. McAdoo, 39 F.3d 269, 273 (10th Cir. 1994).  As in Siegert, the present "alleged defamation was not uttered incident to the termination" since the article was published weeks after Scarbrough was removed from the Fire Chief position.  Siegert, 500 U.S. at 234.  Because there are no claims, identified by the parties or the Court, upon which a jury could reasonably find in Plaintiff's favor, the complaint will be dismissed in its entirety.

Wherefore,

IT IS HEREBY ORDERED that Defendants' Motion to Strike Portions of Affidavit of Plaintiff *(Doc. 11)*, be and hereby is **denied**.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss *(Doc. 6)*, having been addressed as a motion for summary judgment, is hereby **granted**.

DATED this 25th day of September, 1998.

_____

**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:       Richard J. Valle
                             Gary C. Mitchell, P. C.
                             Ruidoso, New Mexico

Counsel for Defendants:      Leonard J. Piazza
                             Thomas A. Sandenaw, Jr.
                             Law Office of T. A. Sandenaw
                             Las Cruces, New Mexico

-9-